# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>DEAN FOODS COMPANY, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-36314 (DRJ)<br><br>(Jointly Administered) |
| Daniel H. Golden, as Liquidating Trustee of the DFC Liquidating Trust,<br><br>Plaintiff,<br><br>v.<br><br>Brookwood Financial Partners, LLC dba Yesway,<br><br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Daniel H. Golden, in his capacity as Liquidating Trustee (the "**Plaintiff**" or "**Trustee**") of the DFC Liquidating Trust, by and through his undersigned counsel, files this complaint (the "**Complaint**") to avoid and recover transfers against Brookwood Financial Partners, LLC dba Yesway ("**Defendant**") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1.      Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property that

---

[1] The debtors or liquidating debtors in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Dean Foods Company (9681) and Dean Holding Company (8390). The liquidating debtors' mailing address is: Daniel H. Golden, Trustee, Dean Foods Company Estate & Liquidating Trust, In Care of BRG, 250 Pehle Avenue, Suite 301, Saddle Brook, NJ 07663, Attn: Rick Wright.

-1-

occurred during the ninety (90) day period prior to Petition Date (as defined herein) pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "**Bankruptcy Code**") and, subject to proof, (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2.      In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of his rights to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).

4.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  In addition, Plaintiff confirms his consent, pursuant to Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**") 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas, to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue of the Debtors' chapter 11 cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

#94430365v3

6.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001.

**PROCEDURAL BACKGROUND**

7.      On November 12, 2019 (the "**Petition Date**"), each of the Debtors commenced a chapter 11 case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

8.      On November 12, 2019, the Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases under the original lead case captioned *In re Southern Foods Group, LLC, et al.* pursuant to Bankruptcy Rule 1015(b). [Case No. 19-36313, D.I. 9].

9.      On March 17, 2021, the Court entered an order confirming the *First Amended Joint Chapter 11 Plan of Liquidation of Southern Foods Group, LLC, Dean Foods Company, and Their Debtor Affiliates* (the "**Confirmation Order**" and "**Plan**," respectively).[2] [Case No. 19-36313, D.I. 3565].

10.     On May 25, 2021, the Court entered the *Final Decree and Order (I) Closing Certain Chapter 11 Cases, (II) Terminating Certain Claims and Noticing Services, (III) Amending the Order Directing Joint Administration of Chapter 11 Cases, and (IV) Granting Related Relief* which, among other things, provided that (i) Dean Foods Company and Dean Holding Company (together, the "**Remaining Debtors**"), the Liquidating Trustee, and the Liquidating Trust each (a) remain a representative of each of the Closing Debtors[3] and their

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Liquidating Trust Agreement. *See* Case No. 19-36313, D.I. 3557-1.

[3] The Closing Debtors are all of the Debtors that were jointly administered under Case No. 19-36313 other than the Remaining Debtors. The list of Debtors can be found at https://dm.epiq11.com/case/southernfoods/info.

-3-

estates for purposes of section 1123(b)(3)(B) of the Bankruptcy Code and (b) retain all rights, interests, powers, and authorities relating to the Liquidation Trust Assets (as defined in the Plan), including, for the avoidance of doubt, all Causes of Action; and (ii) directed that the Remaining Debtors' cases shall remain open and shall be jointly administered under Case No. 19-36314 of Dean Foods Company [Bankr. Case No. 19-36313, D.I. 4057].

11.     The effective date of the Plan (the "**Effective Date**") occurred on May 28, 2021. [Bankr. Case No. 19-36313, D.I. 4063; Bankr. Case No. 19-36314, D.I. 26]. In accordance with the Plan and Confirmation Order, the DFC Liquidating Trust (the "**Trust**") was established as of the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Liquidating Trust Agreement. [Bankr. Case No. 19-36313, D.I. 4065; Bankr. Case No. 19-36314, D.I. 27]

12.     Pursuant to paragraph 8 of the Confirmation Order and Article IV, Section A of the Plan, the Liquidating Trust Assets, including Avoidance Actions arising under chapter 5 of the Bankruptcy Code, were transferred to the Trust. [Bankr. Case No. 19-36313, D.I. 3565].

## THE PARTIES

13.     Pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, Plaintiff was appointed as the Trustee. Plaintiff is authorized and has standing, among other things, to prosecute, compromise, settle, abandon, dismiss, or otherwise dispose of causes of action under chapter 5 of the Bankruptcy Code, including this avoidance action. Pursuant to Article V, Section C of the Plan, the Trustee shall be automatically substituted or supplemented as a real party in interest in any litigation commenced prior to the Effective Date by the Debtors.

14.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that was a private equity real estate investment firm to or for the Debtors. Upon further

#94430365v3

information and belief, at all relevant times, Defendant's principal place of business has been and is located at 138 Conant Street, Beverly, Massachusetts 01915.  Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of Delaware.

## **FACTUAL BACKGROUND**

15.    As more fully discussed in the *Disclosure Statement for Joint Chapter 11 Plan of Liquidation of Southern Foods Group, LLC, Dean Foods Company, and Their Debtor Affiliates* (the "**Disclosure Statement**"),[4] the Debtors were a leading food and beverage company and the largest processor and direct-to-store distributor of fresh fluid milk and other dairy and dairy case products in the United States. The Debtors manufactured, marketed, and distributed a wide variety of branded and private label dairy and dairy case products, including fluid milk, ice cream, cultured dairy products, creamers, ice cream mix, and other dairy products to retailers, distributors, foodservice outlets, educational institutions, and governmental entities across the United States. Prior to commencement of certain sale transactions, the Debtors operated 56 manufacturing facilities in 29 states, located largely based on customer needs and other market factors, with distribution capabilities across all 50 states.

16.    Prior to the Petition Date, the Debtors, as processors and direct-to-store distributors of fresh fluid milk and other dairy products, maintained business relationships with various business entities and individuals, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

---

[4] Bankr. Case No. 19-36313, D.I. 3369.

17.     The financial difficulties that led to the Debtors' decision to file the chapter 11 cases are attributable to a combination of industry-wide and company-specific factors and events.[5] On an industry-wide basis, demand for milk had fallen approximately 2% year-over-year in North America for the 10 years leading up to the Petition Date.  Shrinking consumption of fluid milk and slim margins made things very difficult for conventional milk processors like the Debtors.  In addition to decreasing demand, prices for conventional raw milk increased during 2019: during the third quarter of 2019, prices were approximately 19.3% higher than year-ago levels and increased approximately 7.5% sequentially from the second quarter of 2019.

18.     On a Debtor-specific basis, the Debtors lost a core component of their customer base. In early 2018, Walmart, which including its subsidiaries accounted for approximately 17.5% of the Debtors' net sales for the year ended December 31, 2017, opened a large dairy manufacturing plant in Indiana that resulted in a loss to the Debtors of approximately 100 million gallons of fluid milk in annualized sales volume.  The Debtors lost an additional nearly 40 million gallons of annualized fluid milk sales from another major customer further exacerbating the effects of volume deleverage.  Following these volume declines, the Debtors negotiated waivers of certain leverage related financial covenants.  Ultimately, however, in August 2019 the Debtors reported their second quarter results and projected that they would be a net user of cash for the full 2019 year.  In September and October 2019, cash losses continued to mount, and the Debtors' liquidity diminished.  By early October 2019, the Debtors saw a sharp decline in preliminary third quarter 2019 results and realized that they faced a financial forecast that was deteriorating faster than prior forecasts.

---

[5] These factors and events are discussed in greater detail in the Disclosure Statement.

#94430365v3

19.     As described in Article III of the Plan and Section IV.B of the Disclosure Statement, General Unsecured Claims comprise an impaired class of creditors and are expected to receive less than 1% of the value of their claims.

20.     During the ninety (90) days before and including the Petition Date, that is between August 14, 2019 and November 12, 2019 (the "**Preference Period**"), the Debtors continued to operate their business, including the transfer of money, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise, to various entities.

21.     Upon information and belief, during the course of their relationship, Defendant and one or more of the Debtors entered into agreements for the purchase of goods and/or services from the Defendant by one or more other Debtors, which are evidenced by one or more contracts, purchase orders, invoices, communications, and other documents (collectively, the "**Agreements**").   The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A.   Such details include "Invoice Number," "Invoice Date," "Invoice Amount," and the "Payment Date."

22.     One or more of the Debtors made transfer(s) of an interest of Plaintiff's property to or for the benefit of Defendant during the Preference Period through payments aggregating not less than the amount set forth on Exhibit A hereto (the "**Transfer**" or "**Transfers**").   The details of each Transfer are set forth on Exhibit A and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

23.     Plaintiff is seeking to avoid all of the Transfers made by the applicable Debtor(s) to Defendant within the Preference Period.

#94430365v3

24.     On or about November 18, 2020, Plaintiff,[6] through counsel, sent a demand letter (the "**Demand Letter**") to Defendant, seeking a return of the Transfer(s).  The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to section 547(c) of the Bankruptcy Code, and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence so Plaintiff could review the same.  Plaintiff also performed his own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant.

25.     Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing his own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that he may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

26.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period or that may be avoidable under other provisions of the Bankruptcy Code.  It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by the Debtors, as well as interests of the Debtors in property, to or for the benefit of Defendant or any other transferee.  Plaintiff reserves the right to amend this original Complaint to include the following: (a) further information regarding the Transfer(s); (b) additional transfers; (c) modifications of and/or revision to Defendant's name; (d) additional defendants; (e) additional Debtor plaintiffs; and/or (f) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known to Plaintiff at any time

---

[6] Or the Debtors as the Trustee's predecessor in interest, as applicable.

during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

27.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

28.     During the Preference Period, Dean Foods Company made each Transfer to or for the benefit of Defendant in an aggregate amount not less than $14,863.30.

29.     Each Transfer was made from Dean Foods Company, and constituted transfers of an interest in property of Dean Foods Company.

30.     Defendant was a creditor of Dean Foods Company at the time of each Transfer by virtue of supplying goods and/or services to Dean Foods Company for which Dean Foods Company was obligated to pay in accordance with the Agreements.  *See* Exhibit A.

31.     Each Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by Dean Foods Company to Defendant.  *See* Exhibit A.

32.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by Dean Foods Company to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by Dean Foods Company. *See* Exhibit A.

#94430365v3

33.     Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

34.     Each Transfer was made during the Preference Period, as set forth on Exhibit A.

35.     As a result of each Transfer, Defendant received more than Defendant would have received if: (a) the Debtors' chapter 11 cases were cases under chapter 7 of the Bankruptcy Code; (b) the Transfers had not been made; and (c) Defendant received distributions on account of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, and as described in the Plan and Disclosure Statement, the Debtors' liabilities exceed their assets such that the Debtors' unsecured creditors will not receive payment of their claims in full from the Debtors' bankruptcy estates.

36.     In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

**Second Claim for Relief**
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

37.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

38.     To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by Dean Foods Company without a corresponding intercompany receivable recorded by the Debtor incurring the debt, Plaintiff pleads in the alternative that Dean

#94430365v3

Foods Company did not receive reasonably equivalent value in exchange for such transfer(s) (the "**Potentially Fraudulent Transfers**"); and

A.      Dean Foods Company was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B.      Dean Foods Company was engaged, or about to engage, in business or a transaction for which any property remaining with Dean Foods Company was an unreasonably small capital; or

C.      Dean Foods Company intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

39.      Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

**Third Claim for Relief**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

40.      Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with the allegations contained in this Third Claim for Relief.

41.      Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and/or any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "**Avoidable Transfers**").

42.      Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

43.      Accordingly, pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

#94430365v3

**Fourth Claim for Relief**
**(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))**

44.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

45.     Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

46.     Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

47.     Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against Plaintiff or the Debtors must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

48.     Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following relief against Defendant:

A.     On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate

#94430365v3

and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.      On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors or Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to section 502(d) and (j) of the Bankruptcy Code; and

C.      Such other and further relief as this Court may deem just and proper.

Dated: November 8, 2021

**ASK LLP**

By:  /s/ *Kara E. Casteel*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Kara E. Casteel, Esq., MN SBN 0389115
Bethany Rubis, Esq., MN SBN 0398519
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3870
Fax: (651) 406-9676
Email: brubis@askllp.com

*Attorneys for Plaintiff*

-13-